The Foxon Company v. Commissioner.
Foxon Co. v. Commissioner
Docket No. 48145.
United States Tax Court
T.C. Memo 1955-49; 1955 Tax Ct. Memo LEXIS 291; 14 T.C.M. (CCH) 169; T.C.M. (RIA) 55049; February 28, 1955
Stuart H. Tucker, Esq., 111 Westminster Street. Providence, R.I., for the petitioner. Jack H. Calechman, Esq., for the respondent. JOHNSON Memorandum Opinion JOHNSON, Judge: Respondent has determined a deficiency in corporate income tax for 1950 in the amount of $2,059.08. All of the deficiency is not in dispute, but the sole issue before us is whether petitioner received a taxable gain on the sale of treasury stock. [Findings of Fact] All facts were stipulated and are so found. Petitioner was organized and incorporated under the laws of the State of Rhode Island on or about December 31, 1915. Its principal place of business is in Providence and it is engaged in the production, printing and selling of various types of labels. *292 Petitioner filed its income tax return for the year 1950 with the collector of internal revenue for the district of Rhode Island. Petitioner's corporate charter authorized 120 shares of common stock at $100 par value. At the time of organization all of petitioner's authorized stock was issued, and the stock remained in the hands of the stockholders until December 17, 1927. The stockholders were as follows: Benjamin Richard
30 shares
Frank P. Ingalls
2 shares
Mildred I. Paul
29 shares
August K. Paul
59 shares
On December 8, 1927, Benjamin Richard desired to withdraw from the corporation. According to a requirement of the corporate charter, corporate stock must first be offered to the corporation before a transfer or sale by any stockholder. Richard offered to sell his 30 shares to petitioner for the sum of $20,000. At a meeting of the stockholders on December 17, 1927, petitioner accepted Richard's offer of the 30 shares of stock. Payment was to be made by $12,000 in cash and $8,000 in notes payable in installments of $1,000 each quarter thereafter. Later, a certificate representing Richard's shares was assigned and surrendered to petitioner and Richard's *293 certificate for the 30 shares was cancelled. From 1927 until the time of the stock sale involved in this proceeding, the stock formerly held by Richard was carried on petitioner's records as treasury stock; petitioner did not issue a certificate representing the ownership of these shares. During 1950 August K. Paul, the president and principal stockholder of petitioner, determined that it would be beneficial to petitioner's business if certain employees became stockholders. For this purpose it was proposed that the authorized capital stock of petitioner be changed from 120 shares at a par value of $100 a share to 1,200 shares at a par value of $10 a share. At a special stockholders' meeting on December 1, 1950, a resolution was adopted amending the corporate charter so that the authorized capital stock was 1,200 shares of $10 par value stock. The resolution also authorized the exchange of the present stockholder certificates for those of the new issue. At the December 1, 1950, meeting a resolution was also adopted whereby the president was authorized to sell the stock formerly purchased from Richard to such persons and at a price as the president might determine. In accordance *294 with its custom of many years petitioner determined in December 1950 to pay a bonus to its employees. The president offered the treasury stock to certain employees in payment of all or part of the bonus. Ten employees agreed to accept an aggregate of 31 shares at $300 a share in payment of their bonus. The sales figure was a round figure less than book value of the stock. At the time of the stockholders' meeting of December 1, 1950, the outstanding stock of the company, other than treasury stock, was held as follows: August K. Paul
50 shares
Mildred K. Paul
24 shares
Evelyn P. Pell
11 shares
Valorie DeVenney
5 shares
Mildred K. Paul was the wife of August K. Paul; Evelyn P. Pell and Valorie DeVenney were his daughters. None of the treasury stock has been sold to any one other than petitioner's employees. The stock of petitioner has always been held by persons actively engaged in the business and, in certain cases, by their wives and children. [Opinion] The sole issue is whether the gain of $7,233.23 on the sale of 31 shares of petitioner's treasury stock in 1950 was taxable. Respondent contends that it is taxable under Regulations 111, Section *295 29.22(a)-15. This section of the regulations provides that if a corporation deals in its own shares as it might deal in the shares of another corporation, any gain is subject to tax. Petitioner contends that the sale of its treasury stock did not result in taxable gain. Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to a taxable gain or deductible loss depends upon the real nature of the transaction, and is ascertained from all the surrounding facts and circumstances. In 1937 petitioner purchased the shares in question for cash and notes. These shares were not retired, but were held as treasury stock even though no certificate representing the new ownership was issued. The shares, after a split in par value, were offered to certain of petitioner's employees in payment of December 1950 bonus, and 31 shares were distributed to those employees. The facts in this case are so like those in Burrus Mills, Inc., 22 T.C. 881, (appealed C.A. 5, November 26, 1954), that the decision there must control here. Therefore on the authority of the Burrus Mills case, a decision must be entered for respondent. Cf. Anderson, Clayton & Co. v. United States, 122 Fed. Supp. 837, *296 (certiorari granted February 7, 1955). Decision will be entered for the respondent.